## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WHALE CAPITAL, L.P.** | * | **CIVIL ACTION NO.:** |
| **VERSUS** | * | **SECTION:** |
| **CHRISTOPHER M. RIDGEWAY,** | * | **JUDGE:** |
| **STEPHANIE S. RIDGEWAY, and FS** | | |
| **PROPERTIES OF FLORIDA, LLC** | * | **MAG. JUDGE:** |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*

## COMPLAINT FOR DAMAGES

Plaintiff Whale Capital, L.P., for its complaint for damages against defendants Christopher

M. Ridgeway, Stephanie S. Ridgeway, and FS Properties of Florida, LLC, avers as follows:

### PARTIES

**1.**

Plaintiff Whale Capital, L.P. is a Texas limited partnership. Its general partner is Whale

Capital Management, Inc., which is a Texas corporation with a principal place of business in Texas.

Whale Capital has one limited partner, Michael Whalen, who is a citizen of Texas. Michael Whalen

is also the President of Whale Capital Management.

**2.**

Defendant Christopher M. Ridgeway is a natural person and a citizen of Florida or

Louisiana.

**3.**

Defendant Stephanie S. Ridgeway is a natural person and a citizen of Florida or Louisiana.

**4.**

Defendant FS Properties of Florida, LLC is a Louisiana limited liability company. Its sole member is Christopher Ridgeway, and, therefore, it is a citizen of Florida or Louisiana.

**JURISDICTION AND VENUE**

**5.**

This Court has subject matter jurisdiction under 28 U.S.C. § 1332. The parties are completely diverse, and more than $75,000 is in dispute.

**6.**

The Court also has subject matter jurisdiction under 28 U.S.C. § 1334(b) because this matter arises under Title 11. Further, the Court has supplemental jurisdiction over non-bankruptcy claims under 28 U.S.C. § 1367.

**7.**

Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Orleans and Jefferson Parishes. Those parishes make up part of the Eastern District of Louisiana under 28 U.S.C. § 98(a). Additionally, venue is proper under 28 U.S.C. § 1408 because it arises under Title 11.

**FACTS**

**A.      Background of SCL**

**8.**

In 2016, Whale Capital and Christopher Ridgeway formed a Louisiana limited liability company called Stone Clinical Laboratories, LLC ("SCL"). Whale Capital and Ridgeway were the sole members. The company (at least before bankruptcy) was manager-managed, and Ridgeway was designated as its manager.

2

**9.**

Ridgeway later transferred his interest in SCL to a company he owned—Stone Capital, LLC. The members of SCL became Whale Capital (47% owner) and Stone Capital (53% owner). Ridgeway always remained the manager of SCL.

**10.**

Per the operating agreement, Ridgeway, as manager, was solely responsible to manage and conduct "the day-to-day activities of the Company," and he was given the "full power and authority to do all things on such terms as he, in his sole discretion, may deem necessary or appropriate to conduct, or cause to be conducted, in the best interests of the business and affairs of the Company."

**11.**

As manager of SCL, Ridgeway owed fiduciary duties to SCL and its members, including Whale Capital.

**B.    Whale's Loans to SCL**

**12.**

Whale Capital was SCL's principal source of funding. Over the years, Whale Capital loaned tens of millions of dollars with interest to SCL. All but one of the loans are memorialized in promissory notes in favor of Whale Capital, signed by Ridgeway on behalf of SCL.[1]

**13.**

A list of all loans is included in the proof of claim number 21-2 filed by Whale Capital in the United States Bankruptcy Court (the "Bankruptcy Court") case number 21-10923 of the Eastern

---

[1]       The one loan not memorialized in a promissory note was a loan of $225,000 on or about December 24, 2019.

District of Louisiana (the "Bankruptcy Case"). A copy of said Proof of Claim without its Exhibit B *in globo*, with its list of the loans, is attached to this complaint as Exhibit 1 and incorporated by reference.

**14.**

Among the loans listed in Exhibit A, Whale Capital loaned the principal sum of $1,500,000 to SCL on or about February 2, 2018. That loan was—like others—memorialized in a promissory note, dated February 2, 2018, that was signed by Christopher Ridgeway on behalf of SCL as borrower.

**15.**

Among the loans listed in Exhibit A, Whale Capital continued funding SCL with loans throughout the remainder of 2018 and 2019. Those loans included the following:

a.   April 4, 2019 loan and associated promissory note in the principal amount of $300,000.

b.   April 18, 2019 loan and associated promissory note in the principal amount of $350,000.

c.   April 25, 2019 loan and associated promissory note in the principal amount of $200,000.

d.   May 2, 2019 loan and associated promissory note in the principal amount of $350,000.

e.   May 16, 2019 loan and associated promissory note in the principal amount of $350,000.

f.   May 23, 2019 loan and associated promissory note in the principal amount of $750,000.

g.   June 13, 2019 loan and associated promissory note in the principal amount of $450,000.

h.   June 27, 2019 loan and associated promissory note in the principal amount of $450,000.

i.      July 2, 2019 loan and associated promissory note in the principal amount of $500,000.

j.      July 19, 2019 loan and associated promissory note in the principal amount of $500,000.

k.      August 8, 2019 loan and associated promissory note in the principal amount of $500,000.

l.      August 29, 2019 loan and associated promissory note in the principal amount of $100,000.

m.      September 5, 2019 loan and associated promissory note in the principal amount of $400,000.

n.      September 17, 2019 loan and associated promissory note in the principal amount of $500,000.

o.      October 3, 2019 loan and associated promissory note in the principal amount of $300,000.

**16.**

Among the loans listed in Exhibit A, Whale Capital later made certain additional loans to SCL. Those included four particular loans that required repayment promptly upon SCL's later receipt of funding from third parties:

a.      October 17, 2019 loan and associated promissory note in the principal amount of $300,000. The parties agreed that, if SCL later obtained third party funding or financing, SCL was obligated to immediately repay the loan with interest on a priority and first-position basis out of the funds received.

b.      November 26, 2019 loan and associated promissory note in the principal amount of $250,000. The parties agreed that, if SCL later obtained third party funding or financing, SCL was obligated to promptly repay the loan with interest on a priority and first-position basis out of the funds received, within three days of receiving the third-party funding or financing.

c.      December 4, 2019 loan and associated promissory note in the principal amount of $132,500. The parties agreed that, if SCL later obtained third party funding or financing, SCL was obligated to repay the loan with interest on a priority and first-position basis out of the funds received, within three days of receiving the third-party funding or financing.

5

    d.      December 12, 2019 loan and associated promissory note in the principal amount of $145,000. The parties agreed that, if SCL later obtained third party funding or financing, SCL was obligated to repay the loan with interest on a priority and first-position basis out of the funds received, within three days of receiving the third-party funding or financing.

**17.**

Since the execution of these notes, SCL has received third-party funding and/or financing from various sources.

**18.**

Whale Capital has not been repaid any principal or interest on these notes (or any other notes).

**C.**      **Ridgeways' Surety Agreement**

**19.**

On April 2, 2018, Christopher and Stephanie Ridgeway (sometimes referred to collectively as "the Ridgeways") each signed an agreement personally obligating themselves in part with respect to the February 2, 2018 loan.

**20.**

Specifically, the Ridgeways each promised that, in the event of the closure or liquidation of SCL, they would sell a certain property (bearing municipal number 579 Woodvine Boulevard, Metairie, Louisiana 70005) and remit the sum of $750,000 from the net sale proceeds to Whale Capital, to apply to the February 2, 2018 promissory note.

**21.**

The February 2, 2018 loan and promissory note (like all other loans and promissory notes) has never been repaid.

### D.      SCL Operations in Florida

**22.**

SCL and its owners planned from early on to expand SCL's operations into Florida. In furtherance of that objective, SCL applied to do business in Florida in 2016 and, through this date, has been registered with the Florida Secretary of State.

**23.**

In 2018 and 2019, Ridgeway informed Whale Capital regarding the strategy and "game plan" for SCL's operations in Florida, which was to include an initial four locations of business in Pensacola, Fort Walton, Destin, and Sandestin.

**24.**

In January 2019, Ridgeway sent Whale Capital a Florida business plan for SCL. The business plan states that SCL is poised to take full advantage of opportunities in Florida; lays out the demand for SCL's services in Florida and discusses SCL's plan for entry into Florida; discusses SCL's partnership with key insurance companies; discusses SCL's plan to overcome barriers to entry in Florida; references a contract between SCL and Sacred Heart Hospital in Pensacola; discusses the plan for advertising and marketing to stimulate demand for SCL's "Florida branch"; discusses SCL's receipt of $8mm in grant money from "My Florida Triumph," and how a portion of those funds will be used to build and furnish the new Florida lab that will be modeled after the New Orleans lab; and states SCL's plan to hire 40 employees as it builds and designs its Florida branch laboratories.

**25.**

Michael Whalen, the President of Whale Capital Management, which is the General Partner of Whale Capital, was hosted in Florida by Christopher Ridgeway and other SCL

employees (including its head of human resources and its CFO, Blair Barbier) who showed him SCL's planned Florida operations and business sites. Expenses on the trips were paid by Ridgeway with a SCL company credit card.

26.

SCL signed leases for properties in Miramar Beach and Fort Walton in February and early March 2019. Whale Capital was asked to sign on as a guarantor of SCL's Miramar Beach lease. It agreed. At some point in early 2019, SCL also signed a lease on a property in Freeport, Florida.

27.

SCL made public representations regarding its operations in Florida. Until at least May of 2021, SCL's website, press releases, and social media pages continued to describe SCL as being a company with business locations in Louisiana and Florida.

28.

Whale Capital loaned money to SCL throughout 2019 with the specific understanding that the money was to help fund all of SCL's operations—in Louisiana and Florida.

29.

Nevertheless, when Whale Capital asked for information from SCL about the company's operations in Florida, Ridgeway asserted that operations in Florida were the property of a separate company wholly owned directly or indirectly by Ridgeway—*i.e.*, Stone Clinical Laboratories of FL, LLC ("SCL-Florida").

30.

Whale Capital discovered in December 2020 or January 2021 that SCL-Florida had been secretly created by Ridgeway as a Ridgeway-owned entity in March 2019. Although Whale Capital had discussed with Ridgeway the creation of a separate Florida entity, for regulatory reasons, it

was never agreed that the entity would be solely owned by, and operate solely for the benefit of, Ridgeway.

**31.**

According to records from the Florida Secretary of State regarding the creation of SCL-Florida, Ridgeway had listed SCL's Miramar Beach property (the lease of which Whale Capital had guaranteed) as the principal and mailing address for SCL-Florida. Unbeknownst to Whale Capital, Ridgeway thus took an SCL business opportunity in Florida (and all resulting profits) for himself, even as he caused SCL and Whale Capital to subsidize the operations in Florida.

### E.    Litigation History

**32.**

On April 21, 2021, Whale Capital sued SCL in Louisiana state court, seeking (among other things) repayment of the numerous unpaid promissory notes.

**33.**

On May 18, 2021, Whale Capital filed a derivative lawsuit on behalf of SCL against (among others) Christopher Ridgeway, also in Louisiana state court, asserting claims for harm caused by Ridgeway to SCL.

**34.**

On July 15, 2021, Whale Capital and two other creditors of SCL filed an involuntary bankruptcy proceeding against SCL under Chapter 11 (*In Re Stone Clinical Laboratories, LLC*, No. 21-10923, United States Bankruptcy Court for the Eastern District of Louisiana, Section A). As a result, the state court promissory-notes and derivative suits were and have been stayed.

**35.**

On January 10, 2022, the bankruptcy court entered an "Order for Relief," adjudicating SCL bankrupt.

**36.**

Bankruptcy proceedings continue to this day. In July 2022, SCL's assets, including all provider contracts, were auctioned off. The sale was confirmed by order entered on the docket of the Bankruptcy Court on or about July 25, 2022. On information and belief, SCL (excluding the purportedly separate Florida operations[2]) has no more operations and, thus, is closed for business.

### FIRST CLAIM: SURETY OBLIGATION
### (against Christopher Ridgeway, Stephanie Ridgeway, and FS Properties of Florida, LLC)

**37.**

Per La. Civ. Code art. 3035, "Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."

**38.**

"[E]ach surety when there is more than one, is liable to the creditor . . . for the full performance of the obligation of the principal obligor, without benefit of division or discussion, even in the absence of an express agreement of solidarity." La. Civ. Code art. 3045.

**39.**

Under La. Civ. Code art. 3040, "Suretyship may be qualified, conditioned, or limited in any lawful manner."

---

[2] Whale Capital maintains that SCL-Florida and its Florida operations should be owned by and for the benefit of SCL, and Whale Capital does not waive its contrary position.

**40.**

Christopher Ridgeway and Stephanie Ridgeway each bound themselves, in part, as sureties for SCL's $1,500,000 debt to Whale Capital that is memorialized in the February 2, 2018 promissory note.

**41.**

More specifically, on April 2, 2018, Christopher and Stephanie Ridgeway each signed an agreement in which they promised that, in the event of the closure or liquidation of SCL, they would sell a certain property (bearing municipal number 579 Woodvine Boulevard, Metairie, Louisiana 70005) and remit the sum of $750,000 from the net sale proceeds to Whale Capital, to apply to the February 2, 2018 promissory note.

**42.**

SCL (excluding the purportedly separate Florida operations) has closed,[3] and the February 2, 2018 note has never been repaid. The Ridgeways, therefore, are liable as sureties to Whale Capital.

**43.**

On information and belief, the Ridgeways no longer own the property bearing the municipal address 579 Woodvine Boulevard in Metairie. Among other transactions, shortly after Whale Capital filed its state court lawsuits, Christopher Ridgeway transferred the Woodvine property to a company he owns called FS Properties of Florida, LLC in exchange for $10. Nevertheless, the Ridgeways are not thereby relieved of their surety obligation.

---

[3]         *See* note 2.

**44.**

Ordinarily, "[a]n obligor is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible." La. Civ. Code art. 1873. But the Ridgeways' transfer of the Woodvine property was not a fortuitous event. And, in any event, an obligor is liable for its failure to perform "when the fortuitous event that caused his failure to perform has been preceded by his fault, without which the failure would not have occurred." La. Civ. Code art. 1873. The Ridgeway's transfer of the property and any resulting impossibility is not fortuitous and is due to their own acts, fault, and/or failure to perform in good faith.

**45.**

Likewise, the law considers a condition "as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment." La. Civ. Code art. 1772. "When a suspensive condition is regarded as fulfilled, the conditional obligation becomes enforceable. Nevertheless, the party not at fault may have to content himself with damages rather than specific performance if the latter has become impossible because of the nonfulfillment of the condition." *Id.*, comment c. The nonfulfillment of the condition—or the fact that the Ridgeways cannot sell the property because they no longer own it—is due to the Ridgeways' own acts, fault, and/or failure to perform in good faith, and they should be liable in damages.

**46.**

Alternatively, or in addition, Christopher Ridgeway's transfer of the property to FS Properties of Florida is a nullity. On information and belief, FS Properties of Florida is a mere alter ego of Ridgeway. Ridgeway is the sole owner of FS Properties of Florida. He transferred the property to that company for a mere $10. And months after the quitclaim transfer, Christopher Ridgeway testified under oath that the Woodvine property remained his "second home."

47.

Further, "[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. . . . Absolute nullity may be invoked by any person or may be declared by the court on its own initiative." La. Civ. Code art. 2030. The transfer of the Woodvine property to FS Properties is a nullity because it was conducted shortly after the state court lawsuits were filed in an impermissible and immoral effort to avoid Ridgeway's obligations to Whale Capital.

48.

Whale Capital is entitled to recover in damages under the Ridgeways' surety obligation the lesser of (i) the current fair market value of the property or (ii) $750,000.

## SECOND CLAIM: INTENTIONAL BREACH OF DUTY OF LOYALTY
### (against Christopher Ridgeway)

49.

As manager of SCL, Christopher Ridgeway owes or owed fiduciary duties to SCL and its members, including Whale Capital.

50.

Louisiana law mandates that fiduciaries "may not take even the slightest advantage, but must zealously, diligently, and honestly guard and champion the rights of his principal against all other persons and is bound not to act in antagonism, opposition, or conflict with the interest of the principal to even the slightest extent." *E.g.*, *Bryan D. Scofield, Inc. v. Susan A. Daigle, Ltd.*, 2008-798 (La. App. 3 Cir. 12/10/08), 999 So. 2d 311, 316.

**51.**

A manager can be held personally liable to the LLC or its members for monetary damages if the manager "engage[s] in conduct which demonstrates a greater disregard of the duty of care than gross negligence, including but not limited to intentional tortious conduct or intentional breach of his duty of loyalty." La. Rev. Stat. § 12:1314(B).

**52.**

Christopher Ridgeway intentionally breached his duty of loyalty to Whale Capital by knowingly and intentionally subordinating Whale Capital's interests to his own. As manager of SCL and as the person who signed promissory notes in favor of Whale Capital, Ridgeway knew of the substantial debt (tens of millions of dollars) owing to Whale Capital. But instead of directing SCL funds to repay Whale Capital, Ridgeway instead had SCL repay loans to himself, to family members (including his brother and father-in-law), and/or to companies wholly owned by himself (including Stone Capital).

**53.**

Purposefully choosing to favor his own interests and repay his own loans over those from Whale Capital breached Ridgeway's fiduciary duties.

**54.**

Whale Capital is entitled to recover all damages attributable to Ridgeway's intentional breach of fiduciary duties, including all amounts Ridgeway paid to himself and his companies instead of to Whale Capital.

THIRD CLAIM: FRAUD
(against Christopher Ridgeway)

**55.**

An LLC member may be held liable for fraud practiced upon another. La. Rev. Stat. §
12:1320(D).

**56.**

Fraud is the misrepresentation or suppression of truth with intent to gain an unjust
advantage or cause loss or inconvenience to another. La. Civ. Code art. 1953. Fraud may result
from silence or inaction. *Id.*

**57.**

Ridgeway deceived Whale Capital into making loans to SCL in 2019 by misrepresenting or
suppressing the supposed truth about SCL's operations in Florida.

**58.**

Ridgeway had numerous conversations with Michael Whalen since the founding of SCL
regarding their intent for SCL to conduct operations in Florida. They discussed creating a separate
entity for regulatory reasons, but they never agreed that the separate entity would be solely owned
by Ridgeway or a company wholly owned by Ridgeway.

**59.**

Whale Capital discovered in December 2020 or January 2021 that SCL-Florida had been
secretly created by Ridgeway as separate company owned directly or indirectly by Ridgeway in
March 2019.

**60.**

SCL's operations in Florida (at least in 2019) were funded with SCL's money, and all or substantially all funds for that use came from Whale Capital loans to SCL.

**61.**

Ridgeway solicited and received loans from Whale Capital in 2019 for SCL's entire operations (Louisiana and Florida) without informing Whale Capital that operations in Florida were (purportedly) the operations of a separate company owned solely by Ridgeway, directly or indirectly.

**62.**

Whale Capital knew in 2019 that SCL was conducting operations in Florida, and Whale Capital knew its loaned funds were being used to fund operations in Florida. Whale Capital did not know, however, that SCL operations were (or at least are claimed by Ridgeway to have been) the operations of a separate company created by Ridgeway for the sole benefit of Ridgeway.

**63.**

After creating SCL-Florida as a separate entity, Ridgeway deceived Whale Capital through public representations on SCL's website and on social media to the effect that operations in Florida were part of SCL's business. Additionally, Ridgeway defrauded Whale Capital by suppressing from Whale Capital the fact that SCL-Florida was (purportedly) solely owned by Ridgeway.

**64.**

Had Whale Capital known that Ridgeway was attempting to usurp Florida operations for himself and using Whale Capital's loaned money to fund a purportedly separate company owned by or for the benefit of Ridgeway, Whale Capital would not have continued to make loans to SCL

throughout 2019. Whale Capital would never have agreed to indirectly fund an entity for the sole benefit and profit of Ridgeway.

**65.**

Ridgeway defrauded Whale Capital in another way with respect to loans made in the second half of 2019. The promissory notes with respect to loans to SCL on October 17, 2019, Nov. 26, 2019, December 4, 2109, and December 12, 2019 (in an amount collectively totaling $827,500 excluding interest) are signed by Ridgeway and each contain language obligating repayment immediately or within three days of SCL receiving any later third-party funding or financing.

**66.**

Ridgeway, as manager for SCL, represented to Whalen that these specific promissory notes would be repaid promptly upon receipt of third-party funding.

**67.**

Ridgeway, however, never intended for SCL repay Whale Capital promptly upon receipt of third-party funding. And, in line with Ridgeway's intentions all along, SCL has never repaid the October 17, 2019, Nov. 26, 2019, December 4, 2109, and December 12, 2019 loans—even though it has since received third-party financing or funding from (among others) family members, the SBA, TVT Capital/ACH Capital, and Stone Capital.

**68.**

Ridgeway never intended to exercise his managerial authority to have Whale Capital repaid upon the later receipt of third-party funding. He suppressed the truth of his intentions. Had Whale Capital known the truth, it never would have made the October 17, 2019, Nov. 26, 2019, December 4, 2109, and December 12, 2019 loans.

**69.**

Whale Capital is entitled to recover all damages attributable to Ridgeway's fraudulent misrepresentations or suppressions of truth, including all amounts Whale Capital loaned to SCL between August and December 2019.

**FOURTH CLAIM: OBJECTION TO RIDGEWAY CLAIM IN BANKRUPTCY[4]
(against Christopher M. Ridgeway)**

**70.**

The bankruptcy schedules of SCL list Christopher Ridgeway as an unsecured creditor in the amount of $3,233,379.25 (the "Ridgeway Claim").

**71.**

Such scheduling in a chapter 11 case makes the filing of a Proof of Claim by the creditor unnecessary pursuant to Bankruptcy Rule 3003(c)(2).

**72.**

Whale Capital objects to the Ridgeway Claim because it is subject to setoff for the damages Christopher Ridgeway caused SCL by his breaches of fiduciary duty as manager of SCL.

**73.**

Said breaches of fiduciary duty include, but are not limited to, (a) the loans he caused SCL to make unto SCL-Florida, which loans starved SCL of the cash it need to fund its operations, (b) the business opportunities Christopher Ridgeway diverted unto SCL-Florida and other entities (described below), and (c) the payment of debts owing to companies he owned and to family members in lieu of payments to the other creditors of SCL, including Whale Capital.

---

[4]      The Fourth and Fifth Claims are subject to the Standing Order of Reference of the Eastern District of Louisiana.

**FIFTH CLAIM: SUBORDINATION OF CLAIM UNDER 11 U.S.C. § 510(C)**
**(against Christopher M. Ridgeway)**

**74.**

The factual allegations set forth in the Second and the Fourth Claims, above, regarding the starving of SCL of the cash for its cash needs for the direct or indirect benefit of Christopher Ridgeway are reavered herein as if copied herein *in extenso*.

**75.**

As described above, Christopher Ridgeway, while manager of SCL, diverted business opportunities of SCL unto SCL-Florida.

**76.**

Christopher Ridgeway, while manager of SCL, diverted business opportunities of SCL unto Stone Entertainment & Production Diagnostics, LLC ("Stone Entertainment"), a company he directly or indirectly owned.

**77.**

Christopher Ridgeway, while manager of SCL, diverted business opportunities of SCL unto Stone Direct Diagnostics, LLC ("Stone Direct"), a company he directly or indirectly owned.

**78.**

The diversion of business opportunities of SCL unto companies owned directly or indirectly by Christopher Ridgeway harmed SCL and constitutes inequitable conduct.

**79.**

Christopher Ridgeway, while manager of SCL, stripped SCL of its employees, moving the employees into Stone Consulting and Management Services, LLC ("Stone Consulting"), a company he directly or indirectly owned.

**80.**

The stripping of SCL of its employees lessened the going concern value of SCL and constitutes inequitable conduct.

**81.**

The above-described misconduct of Christopher Ridgeway resulted in injury to the creditors of SCL by the loss of business opportunity, by the inequality to use diverted funds to satisfy the cash needs of SCL, and by decreasing the value of SCL.

**82.**

The above-described misconduct of Christopher Ridgeway conferred an unfair advantage on him to the extent he caused SCL to pay the debts of companies he owned and those of his family members (rather than other creditors) and to the extent he caused the cash of SCL to fund operations of companies he owned (directly or indirect) 100%.

**83.**

The misconduct of Christopher Ridgeway described here constitutes breaches of fiduciary duty.

**84.**

The equitable subordination of the claim of Christopher Ridgeway would not be inconsistent with the provisions of the Bankruptcy Code.

**PRAYER FOR RELIEF**

**85.**

Wherefore, Whale Capital, L.P. prays for the following relief:

1.  For a judgment that Christopher M. Ridgeway and Stephanie S. Ridgeway are liable to Whale Capital, L.P., in solido (jointly and severally) under the surety agreement.

2.  For a judgment that Ridgeway's transfer of the Woodvine property to FS Properties of Florida, LLC is a nullity.

3.  For a judgment that Christopher Ridgeway is liable to Whale Capital, L.P. for intentional breach of the duty of loyalty.

4.  For a judgment that Christopher Ridgeway is liable to Whale Capital, L.P. for fraud.

5.  For a judgement disallowing the claim of Christopher Ridgeway in the Bankruptcy Case.

6.  For a judgment that the Claim of Christopher Ridgeway in the Bankruptcy Case be subordinated to the unsecured Claim of Whale Capital, LLC, to wit Proof of Claim 21-2 in the Bankruptcy Case, as well as to all unsecured creditors in the bankruptcy case.

7.  That Whale Capital, L.P. be awarded sufficient compensation for its damages, together with pre- and post-judgment interest, court costs, attorneys fees, and all other general, special, and equitable relief the Court deems just and proper.

Respectfully submitted,

Thomas M. Flanagan (#19569)
Anders F. Holmgren (#34597)
Alixe L. Duplechain (#39167)
FLANAGAN PARTNERS LLP
201 St. Charles Ave., Suite 3300
New Orleans, LA 70170
Telephone: (504) 569-0235
Facsimile: (504) 592-0251
tflanagan@flanaganpartners.com
aholmgren@flanaganpartners.com
aduplechain@flanaganpartners.com

Albert J. Derbes, IV (#20164)
THE DERBES LAW FIRM, LLC
3027 Ridgelake Dr.
Metairie, LA 70002
Office: 504-837-1230
Direct: 504-207-0912
Fax: 504-832-0323
ajdiv@derbeslaw.com

By: /s/ Anders F. Holmgren

*Attorneys for Whale Capital, L.P.*