UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WHALE CAPITAL, L.P.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-2570** |
| **CHRISTOPHER M. RIDGEWAY, ET AL.** | **SECTION: "P" (2)** |

<u>**ORDER AND REASONS**</u>

Before the Court is the Motion for Summary Judgment filed by Defendants, Christopher Ridgeway, Stephanie Ridgeway, FS Properties of Florida, LLC ("FS Properties"), and Stone Capital, LLC ("Stone Capital"). [1] Plaintiff, Whale Capital, L.P. ("Whale Capital"), opposes the motion.[2] For the reasons that follow, **IT IS ORDERED** that the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND

This case arises out of a failed business venture. In 2016, Christopher Ridgeway formed a Louisiana limited liability company, Stone Clinical Laboratories, LLC ("SCL"), to provide laboratory testing services.[3] Ridgeway solicited investment from Michael Whalen, a limited partner of Whale Capital.[4] Whale Capital agreed to purchase a minority stake in SCL and loaned SCL tens of millions of dollars between 2016 and 2019.[5] Many of these loans were memorialized in promissory notes.[6] In connection with one promissory note, Ridgeway and his wife, Stephanie Ridgeway, signed a suretyship agreement, pledging that they would sell a property in Metairie,

---

[1] R. Doc. 95.
[2] R. Doc. 108. Unless otherwise specified, "Ridgeway" shall refer to Christopher Ridgeway.
[3] *See generally* SCL Operating Agreement, R. Doc. 95-4. Because the Court is considering Defendants' Motion for Summary Judgment, it will construe the facts in the light most favorable to Whale Capital as the nonmoving party. *See Deshotel v. Wal-Mart La., L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017).
[4] Whale Capital Statement of Corporate, R. Doc. 90 at 2.
[5] *See* R. Doc. 1-2 at 2.
[6] *Compare* R. Doc. 95-1 at 5-6 (describing numerous promissory notes) *with* R. Doc. 108 at 4 ("All but one of the loans are memorialized in promissory notes in favor of Whale Capital, signed by Ridgeway on behalf of SCL.").

Louisiana, and pay up to $750,000 of the proceeds to Whale Capital "[s]olely in the event of a closure and/or liquidation of" SCL.[7]

Soon after SCL was founded, the company and its investors began discussing the concept of expanding its operations to Florida.[8]  Whale Capital contends it agreed to pour millions into this expansion under the impression that it owned a stake in the Florida operations via its minority ownership of SCL.  But, Whale Capital insists, Ridgeway secretly structured SCL's Florida operations in a completely separate entity, Stone Clinic Laboratories of FL, LLC ("SCL-Florida"), to fraudulently deprive Whale Capital of an ownership share in the Florida expansion.[9]

In 2019, as SCL sought additional third-party investment to grow the business, Whale Capital agreed to exchange its ownership interest in SCL "for certain non-transferable warrants covering a 5% equity stake in" SCL subject to a "reversion option" that would give Whale Capital the option to retroactively void this exchange.[10]  Whale Capital contends that it properly exercised the reversion option 10 months later, thereby returning Whale Capital to its status as a minority owner of SCL.[11]

SCL never repaid Whale Capital for its many loans to the company.[12]  Ultimately, Whale Capital sued SCL in Louisiana state court in April 2021 and, a month later, filed a derivative lawsuit in Louisiana state court against Ridgeway and others.[13]  Around the same time, the

---

[7] *See* R. Doc. 95-14.
[8] *See* R. Doc. 108-4; R. Doc. 95-3.
[9] *See* R. Doc. 108 at 5.
[10] *See* Third Amended and Restated Proceeds Sharing Agreement, R. Doc. 95-9 at 1; Exchange Agreement, R. Doc. 108-11 at 3-9.
[11] R. Doc. 108-11 at 29-30.  Defendants insist that SCL, as a debtor, contests whether Whale Capital properly exercised its execution of the reversion option.  *See* R. Doc. 111 at 11.
[12] R. Doc. 108-2 at 1.
[13] *See* Whale Capital's First Petition for Damages, R. Doc. 108-12; Whale Capital's Second Petition for Damages, R. Doc. 108-13.

Ridgeways transferred the Metairie property to FS Properties, an LLC managed by Ridgeway, for $10 and "other valuable consideration."[14]

Whale Capital subsequently filed an involuntary petition of bankruptcy against SCL in the United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Court"),[15] and SCL was adjudicated bankrupt in January 2022. A reorganization plan was consummated on January 14, 2023 (the "Plan"),[16] and the Bankruptcy Court confirmed the Plan on February 2, 2023 (the "Confirmation Order").[17]

Whale Capital filed the instant federal district court action in August 2022, bringing five claims. First, Whale Capital seeks to enforce the surety obligation against Christopher Ridgeway, Stephanie Ridgeway, and FS Properties. Second, Whale Capital brings a fraud claim against Christopher Ridgeway. Third, Whale Capital objects to Christopher Ridgeway's claim in the Bankruptcy Court. Fourth, Whale Capital seeks to subordinate Christopher Ridgeway's bankruptcy claim to its own. Fifth, Whale Capital seeks a declaratory judgment against Christopher Ridgeway and Stone Capital (a separate entity from SCL) finding that it owns 47% of SCL's equity. Defendants now move for summary judgment on all of Whale Capital's claims.[18]

## II.   LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[19] "[C]ourts may not 'evaluate the credibility of the witnesses, weigh the evidence, or resolve factual

---

[14] R. Doc. 108-14.
[15] *See* Involuntary Petition Against a Non-Individual, R. Doc. 1, *In re Stone Clinic Laboratories, LLC*, No. 21-10923 (Bankr. E.D. La. July 15, 2021).
[16] R. Doc. 19-4 at 21.
[17] R. Doc. 19-4 at 1.
[18] R. Doc. 95.
[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

disputes.'"[20]  At summary judgment, "[t]he sole question is whether a 'reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor.'"[21]

The moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[22]  The burden then switches to the non-moving party to demonstrate either the existence of a genuine issue of material fact or "that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[23]

## III.    LAW AND ANALYSIS

### A.  Suretyship

Like a guarantor's contract, a "[s]uretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."[24]  A suretyship "may be established for any lawful obligation," and "may be subject to a term or condition, may be presently existing, or may arise in the future."[25]

In 2018, Whale Capital loaned SCL $1.5 million, memorialized in a promissory note.[26]  In connection with the promissory note, the Ridgeways signed a suretyship agreement that provides, in part:

> Solely in the event of a closure and/or liquidation of Stone Clinical Laboratories, L.L.C., Stephanie S. Ridgeway wife of/and Christopher R. Ridgeway agree to sell that certain piece or portion of real property bearing municipal number 579 Woodvine Boulevard, Metairie, Louisiana, 70005, and remit the sum of

---

[20] *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991)).
[21] *Id.* (quoting *Int'l Shortstop, Inc.*, 939 F.2d at 1263).
[22] *Int'l Shortstop, Inc.*, 939 F.2d at 1264-65 (quoting *Golden Rule Ins. Co. v. Lease*, 755 F.Supp.948, 951 (D. Colo. 1991)).
[23] *Id.* at 1265.
[24] LA. CIV. CODE ANN. art. 3035.
[25] LA. CIV. CODE ANN. art. 3036.
[26] R. Doc. 95-5.

$750,000.00 from the net sale proceeds of the hereinabove described real property, to Whale Capital, LP, to apply same to the foregoing Promissory Note.[27]

One month after Whale Capital filed its initial state court lawsuit against Christopher Ridgeway, the Ridgeways transferred the Metairie property to FS Properties for $10 and "other valuable consideration."[28]  Whale Capital claims the suretyship agreement remains enforceable because the promissory note was never repaid and SCL's bankruptcy triggered the Ridgeways' suretyship obligations.[29]  Whale Capital seeks damages or, in the alternative, a court order nullifying the property transfer to permit a sale pursuant to the surety agreement.[30]

       *i.   The suretyship agreement has not been extinguished.*

Defendants first argue that the suretyship was extinguished when SCL's bankruptcy trustee (the "Liquidating Trustee") settled its bankruptcy adversary action against Whale Capital, recognizing Whale Capital's full proof of claim and stipulating that Whale Capital will receive half of all "proceeds distributed to general unsecured creditors until such time as the general unsecured creditors are paid in full."[31]  Defendants argue this settlement extinguished SCL's principal obligation to Whale Capital, thereby extinguishing the contingent suretyship agreement.[32]

Defendants, however, have failed to show how the terms of this settlement agreement extinguish the Ridgeways' obligation under the suretyship agreement.  Contrary to Defendants' arguments, the settlement agreement recognizes Whale Capital's full claim, and only applies to

---

[27] R. Doc. 95-14 at 1.
[28] R. Doc. 108-14.
[29] R. Doc. 22 at 14-16.
[30] *Id.* at ¶¶ 50-51.
[31] R. Doc. 60-1 at 4, *Stone Clinical Lab'ys., LLC v. Whale Cap., LP* (*In re Stone Clinical Lab'ys., LLC*), Case No. 21-10923, Adv. No. 22-1003 (Bkr. E.D. La. Dec. 4, 2023).
[32] R. Doc. 95-1 at 15 (citing LA. CIV. CODE ANN. art. 3059).

distributions to all general unsecured creditors.  It says nothing about whether Whale Capital may seek claims against parties other than SCL, like the Ridgeways and FS Properties.

ii.    *The suretyship obligation has been triggered.*

Next, Defendants argue that Whale Capital's claim is premature because the surety agreement is only enforceable "in the event of a closure and/or liquidation of Stone Clinical Laboratories, L.L.C."[33]  Defendants contend SCL has not been liquidated or closed during the bankruptcy process because its Reorganization Plan provides that "[t]he Debtor shall continue in existence as the Post-Effective Date."[34]

As Whale Capital points out, however, Defendants neglect their own admission that "SCL is closed and no longer conducting its lab testing business."[35]  Moreover, Defendants' argument that SCL is not closed strains common sense because substantially all of SCL's assets were sold during the bankruptcy process, save for SCL's cash, accounts receivable, and claims against third parties, presumably to be distributed to SCL's creditors.[36]  "[T]he prevailing meaning of 'liquidation' is sale of assets to pay off debts," and the bankruptcy asset sale meets that definition. The "closure and/or liquidation" condition of the suretyship agreement has been satisfied.

iii.    *Defendants' remaining arguments fail.*

Defendants half-heartedly insist that they "would show that Whale Capital effectively defeated SCL's ability to pay the outstanding promissory notes . . . by placing [SCL] in involuntary

---

[33] *Id.* at 16 (quoting R. Doc. 95-14 at 1).

[34] *See* R. Doc. 95-12 at 42.

[35] R. Doc. 38-5 at 5; *see also* FED. R. CIV. P. 36(b).

[36] *See* Joint Motion for Orders (A) Approving Auction Procedures and Bid Procedures; and (B) Approving Sale of Property of the Estate Free and Clear of Liens and Claims, R. Doc. 333, *In re Stone Clinical Lab'ys, LLC*, No. 21-10923 (Bkr. E.D. La. April 26, 2022) ("The Debtor proposes to sell substantially all of its Assets.  The sale will not include any cash held by the Debtor, the Debtor's accounts receivable, or claims possessed by the Debtor against third parties."); Order (I) Approving Sale Free and Clear of Liens, Claims, Encumbrances and (II) Granting Related Relief, R. Doc. 486, *In re Stone Clinical Lab'ys, LLC*, No. 21-10923 (Bkr. E.D. La. July 25, 2022); Notice of Closing of Sale of Property of the Estate Free and Clear of Liens and Claims, R. Doc. 522, *In re Stone Clinical Lab'ys, LLC*, No. 21-10923 (Bkr. E.D. La. Aug. 12, 2022).

bankruptcy."[37]   But Defendants concede that SCL consented to entering Chapter 11 bankruptcy, and there is no evidentiary or legal support for the contention that Whale Capital's actions in bringing the involuntary petition were improper.[38]

Finally, Defendants argue that annulling the property transfer would be improper because the transfer "violates no public order" and does not constitute "'an impermissible and immoral effort.'"[39]   Louisiana Civil Code articles 2029 through 2035 govern the nullfying of contracts.   "A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral."[40]   For example, a loan to support a political campaign structured to circumvent campaign finance laws has an illicit object.[41]

In *Dugas v. Dugas*, a father transferred properties to his daughter while he was being sued by potential judgment creditors.[42]   Once the threat of the potential creditors had passed, the daughter refused to return the properties, and her father filed suit.[43]   In competing motions for summary judgment, both argued that the transfers were invalid: the father, for lack of consideration; the daughter, because they were made for an illicit and immoral purpose.[44]   As to all but one piece of property, the trial court found the transfers null and without legal effect, and the court returned the properties to the father.[45]

The Louisiana Third Circuit reversed the trial court because "Louisiana public policy does not permit a potential debtor to transfer property to someone else in order to secrete it from

---

[37] *See* R. Doc. 95-1 at 17.   Whale Capital also notes that SCL consented to being placed in bankruptcy.   *See* R. Doc. 95-2 at 12; *see also* R. Doc. 108-15 at 73-74, 76.
[38] FED. R. CIV. P. 56(a).
[39] R. Doc. 95-1 at 18 (quoting LA. CIV. CODE ANN. art. 2030).
[40] LA. CIV. CODE ANN. art. 2030.
[41] *See United States v. Fontenot*, 665 F.3d 640, 646 (5th Cir. 2011).
[42] 2001-669 (La. App. 3 Cir. 12/26/01), 804 So. 2d 878, 879.
[43] *Id.*
[44] *Id.*
[45] *Id.* at 879.

potential creditors, in essence, for an illicit purpose."[46]  Once a cause of action against a potential

debtor has accrued, the potential debtor cannot try to hide his assets through a transfer, even if no

lawsuit is pending.[47]  Given that the father admitted "he transferred his properties to his daughter

to put them out of these potential creditors' reach," the Third Circuit concluded that the transfers

were "for an illicit and immoral purpose."[48]  So as not to unjustly enrich the father, the court relied

on a clause of Louisiana Civil Code article 2033, which provides that "a performance rendered

under the contract that is absolutely null because its object or its cause is illicit or immoral may

not be recovered by a party who knew or should have known of the defect that makes the contract

null."  Though the Third Circuit "loathed to allow [the daughter] to benefit" from the transfers

because she was equally aware of their deceptive purpose, the court determined that it was the only

fair outcome permitted by article 2033.

The Ridgeways transferred the Metairie property to FS Properties shortly after Whale

Capital filed suit in state court against SCL in April 2021 to recover under the promissory notes

(including the promissory note guaranteed by the suretyship agreement).[49]  Neither Defendants

nor Whale Capital addresses whether Whale Capital's claim under the suretyship agreement had

accrued when the transfer occurred on May 19, 2021, more than a year before SCL's assets were

auctioned on June 27, 2022.  A review of Louisiana state court cases, as well as federal court cases

applying Louisiana law, reveals no guidance on the question presented: whether a transfer that

occurs before a potential creditor's claim has accrued, but appears imminent, is illicit or immoral

under the law.  As a federal court exercising diversity jurisdiction, this Court's aim is to resolve

---

[46] *Id.* at 881.
[47] *Id.* (citing *LeBlanc v. Am. Emps. Ins. Co.*, No. 6627 (La. App. 3 Cir. 10/17/1978), 364 So. 2d 263); *see also* LA. CIV. CODE ANN. art. 2036.
[48] *Dugas*, 804 So. 2d at 882.
[49] *See* R. Doc. 108-12.

this issue as the Louisiana Supreme Court would.[50]  Absent such guidance, this Court is left to make an *Erie* guess.[51]  Considering the timing of the transfer shortly after Whale Capital filed its lawsuit against SCL, there is sufficient evidence to infer that the transfer was made for the illicit purpose of evading the Ridgeways' obligation under the suretyship agreement, creating an issue of material fact fatal to summary judgment.

The Louisiana Third Circuit's decision in *Dugas* might suggest that the Ridgeways should not be permitted to recover the property.  But article 2033 permits undoing an illicit transfer "in exceptional situations when, in the discretion of the court, that recovery would further the interest of justice."  The Ridgeways' possession of the property would make it easier to fashion a remedy for the suretyship obligation.  Accordingly, revocation of the transfer remains a possible remedy if Whale Capital prevails on this claim.

## B. Fraud

"Fraud is a misrepresentation or a suppression of the truth made with the intention to obtain an unjust advantage for one party or to cause a loss or inconvenience to another," and "may also result from silence or inaction."[52]  A plaintiff bringing a claim for fraud under Louisiana law must prove the following elements: (1) a misstatement or omission (2) of a material fact (3) made with the intent to defraud (4) on which the plaintiff relied and (5) which proximately caused the plaintiff's injury.[53]  Under Louisiana law, "[f]raud cannot be predicated on unfulfilled promises or

---

[50] *S.K.A.V., L.L.C. v. Indep. Specialty Ins. Co.*, 103 F.4th 1121, 1123 (5th Cir. 2024) (citing *Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d 191, 206 (5th Cir. 2007)).

[51] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) ("In the absence of a final decision by the Louisiana Supreme Court, we must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case. . . . [A]lthough we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them.") (internal citations omitted).

[52] LA. CIV. CODE ANN. art. 1953.

[53] *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).

statements as to future events."[54]  In other words, "[t]he mere failure to do what one promises in order to induce another to sign a contract is not fraud but a mere breach of promise."[55]

Federal Rule of Civil Procedure 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  "In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading."[56]

Whale Capital presents two theories of fraud.  First, Whale Capital contends that Ridgeway created a separate entity for his sole benefit to own and operate SCL's business in Florida despite representing to Whale Capital that it would have an equity stake in those operations through its ownership interest in SCL.[57]  Second, Whale Capital claims Ridgeway promised to promptly pay back certain loans made by Whale Capital to SCL between October and December 2019 (the "Bridge Loans"), when Ridgeway never intended to do so.[58]  Defendants move for summary judgment on both theories of fraud.  The Court will address Whale Capital's second theory of fraud first.

### i.    The Bridge Loans claim fails.

Whale Capital claims Ridgeway committed fraud by promising to promptly repay loans Whale Capital gave SCL when he never actually intended for SCL to repay the loans.  Whale

---

[54] *Johnson v. Unopened Succession of Alfred Covington, Jr.*, 42,488 (La. App. 2 Cir. 10/31/07), 969 So. 2d 733, 742.
[55] *Id.* (citing *Dutton & Vaughan, Inc. v. Spurney*, No. 91-CA-1076 (La. App. 4 Cir. 3/26/1992), 600 So. 2d 693).
[56] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004).
[57] R. Doc. 22 at ¶¶ 55-61.
[58] *Id.* at ¶¶ 62-66.

Capital relies on a promissory note dated November 26, 2019, in which SCL and Whale Capital agreed that:

> Upon [SCL] securing and receiving any third-party funding or financing, including but not limited to any loan, credit facility or letter of credit, [SCL] hereby agrees to pay to [Whale Capital] *out of any first monies received* by [SCL] from such third party lender, the entire outstanding principal amount of this Note, . . . $250,000.00 . . . plus an additional sum for interest in the amount of . . . $25,000.00 . . .. [SCL] understands and agrees that [SCL] is promising to pay [Whale Capital] this sum of money, out of any funds received from any third-party funding or financing, *on a priority and first position basis*.[59]

Whale Capital contends SCL was obligated to immediately turn over any third-party funding to Whale Capital, regardless of whether those funds were needed for operational expenses.[60]  Whale Capital contrasts the terms of the promissory note with Ridgeway's deposition testimony as SCL's corporate representative, in which Ridgeway stated that Whale Capital's loans to SCL were never repaid "[b]ecause per our Operating Agreement, Michael [Whalen] and I would only be repaid when there was a net profit of the company to make distributions."[61]  Whale Capital argues that this testimony reveals Ridgeway, as SCL's manager, never planned to honor SCL's commitment to repay Whale Capital with any third-party fundraising SCL received.[62]

This theory of fraud fails because SCL's obligation under the promissory note to pay Whale Capital "out of any first monies received" is only a promise of future conduct, not a representation of a fact then existing.[63]  Whale Capital insists that Ridgeway never intended to repay the loans, and that his intent was fraudulent.[64]  But Louisiana law is clear that "[t]he mere failure to do what one promises in order to induce another to sign a contract is not fraud but a mere breach of

---

[59] Promissory Note dated Nov. 26, 2019, R. Doc. 108-8 at 1 (emphasis added).
[60] R. Doc. 109 at 19.
[61] SCL Depo. Tr. 105, R. Doc. 108-10 at 3.
[62] R. Doc. 108 at 19-20.
[63] *See Johnson*, 969 So. 2d at 742.
[64] *See* R. Doc. 108 at 19-20.

promise."[65]  To hold otherwise would transform any claim for breach of contract into a fraud claim. This theory of fraud is, therefore, dismissed.

    *ii.    The SCL-Florida claim survives.*

Whale Capital does not dispute that SCL's Florida expansion plans included creating a new entity to house those operations.[66]  But Whale Capital contends Ridgeway fraudulently induced it to pour more money into SCL by falsely representing that the new Florida entity was owned by SCL (and, consequently, partially owned by Whale Capital).  Whale Capital argues this constituted fraud because Whale Capital relied upon that representation when it loaned SCL millions of dollars that were never repaid.[67]  Whale Capital contends that it would not have provided this funding if it had known Ridgeway would act to deprive it of an equity stake in the Florida entity.  As evidence it was deceived, Whale Capital submits various materials related to the Florida operations that suggest SCL owned and operated the Florida business, along with communications from January 2021 reflecting Michael Whalen's surprise upon learning SCL-Florida was not owned by SCL.[68]

Defendants make various arguments regarding this claim, none of which are availing. First, Defendants argue this theory of fraud is really a disguised claim for usurpation of corporate opportunity and breach of fiduciary duty, claims that belong to SCL's estate under the bankruptcy plan.  Defendant is wrong here because Whale Capital would be injured by funding an entity that

---

[65] *Johnson*, 969 So. 2d at 742 (citing *Dutton & Vaughan*, 600 So. 2d 693).

[66] *See* R. Doc. 108-16 at 25, 74; R. Doc. 108 at 18 ("The defendants suggest Whale Capital knew (or should have known) that Ridgeway created a separate entity because he made public filings with the Florida Secretary of State. But the deception was not in the mere creation of separate entity. That part was discussed.").

[67] *Id.*

[68] *See* R. Doc. 108-18 at 1 (On January 28, 2021, Whalen wrote to Ridgeway, "Kathy is now also saying that the FL biz is only yours and has nothing to do with SCL or me/Whale Cap? What's going on here and why do you think this? FL was funded by me, brainstormed by both of us, and it was agreed that licenses in both states were important to provide a fail safe to our labs in case either got shut down."  Later that day, Ridgeway told Whalen that their representatives were exchanging information and said, "Sorry thought you were in the loop on this.").

it believed it partially owned, and that harm is distinct from any harm SCL may have suffered by making its own, separate loans to SCL-Florida.

Second, Defendants argue that the separate ownership structure was necessary because Michael Whalen's prior felony conviction could jeopardize SCL's Medicare license in Florida and could scare away outside investors.[69] In 2006, Michael Whalen pleaded guilty to one count of conspiracy to manipulate the price of a commodity in interstate commerce.[70] Defendants point to 42 CFR § 424.530, which provides that the Centers for Medicare & Medicaid Services ("CMS") may

> deny a provider's or supplier's enrollment in the Medicare program [if] . . . [t]he provider, supplier, or any owner, managing employee, managing organization, officer, or director of the provider or supplier was, within the preceding 10 years, convicted . . . of a Federal . . . felony offense that CMS determines is detrimental to the best interest of the Medicare program and its beneficiaries.

But Defendants' arguments are undercut by the fact that Whalen's conviction occurred more than 10 years before SCL-Florida was incorporated in 2019, and Defendants provide no other evidence that Whalen's presence caused SCL to lose out on funding besides Ridgeway's vague and conclusory declaration.[71]

Third, Defendants argue Whalen's presence threatened SCL's ability to fundraise. On August 9, 2019, Whale Capital agreed to exchange its 47% equity stake in SCL for "certain non-transferable warrants covering a 5% equity stake."[72] Whale Capital later acknowledged this exchange was necessary "[i]n order to continue efforts to secure additional investors or financing options for [SCL]."[73] The import of that statement is not entirely clear without additional context,

---

[69] R. Doc. 95-3; R. Doc. 95-13 at 13.
[70] R. Doc. 95-6 at 1. A 2012 settlement between Whalen and the Federal Energy Regulatory Commission did not result in criminal charges. *Id.* at 34-46.
[71] *See* R. Doc. 95-3.
[72] *See* Third Amended and Restated Proceeds Sharing Agreement, R. Doc. 95-9 at 1-2 (describing the terms of the original proceeds sharing agreement).
[73] *See id.* at 1-2 (describing the terms of the original proceeds sharing agreement).

but it does not rebut Whale Capital's summary judgment evidence suggesting Ridgeway structured SCL-Florida as an independent entity without Whale Capital's knowledge. At most, it creates a genuine dispute of material fact as to whether Whale Capital knew SCL-Florida's true ownership structure.

Finally, Defendants argue that the supposed fraud was open and obvious because the public filings establishing the Florida entity indicated its ownership, Whalen had access to "SCL's financial and banking information," and Whalen could have simply asked Ridgeway or SCL employees about the Florida entity's ownership.[74] But, as Whale Capital notes, the Florida entity's filing with the Florida Secretary of State does not set forth the company's ownership, only listing Ridgeway as its registered agent and manager,[75] and Ridgeway and SCL repeatedly represented that SCL operated in Florida. For example, Ridgeway wrote an email to Whalen on October 3, 2019, attaching a document titled "FL Blue Credentialing Approval," and wrote, "Big day for SCL!!!"[76] A few months later, SCL issued a press release announcing that it had "entered into an in-network provider agreement with Blue Cross Blue Shield of Florida."[77] Moreover, Defendants provide no support for their contention that Whale Capital had a duty to inquire beyond Ridgeway's representations. Instead, it appears that Ridgeway, as SCL's manager, had a fiduciary duty to act in good faith to Whale Capital, a member of SCL.[78]

### iii.    The fraud claim is not prescribed.

While Defendants admit that a two-year prescription period applies to Whale Capital's fraud claim,[79] Defendants nonetheless argue, somewhat illogically, that Whale Capital's fraud

---

[74] R. Doc. 95-1 at 19.
[75] R. Doc. 108-7.
[76] R. Doc. 108-16 at 25.
[77] *Id.* at 74.
[78] *See* LA. STAT. ANN. § 12:1314(A)(1); *see also* SCL Operating Agreement, R. Doc. 95-4 (providing that Whale Capital was a member of SCL and Ridgeway was the manager of SCL).
[79] R. Doc. 95-1 at 22; R. Doc. 111 at 10.

claim is prescribed because it did not file suit within a year after discovering SCL-Florida's true ownership structure in December 2020 or January 2021.[80]  Because this action was filed on August 8, 2022, under the terms of Defendants' admission, Whale Capital's fraud claim is not prescribed.[81]

      *iv.*   *The fraud claim is pled with particularity.*

Finally, Defendants argue that Whale Capital has not pled its fraud claim with sufficient particularity.  Fraud and fraudulent inducement claims must be pled "with particularity the circumstances constituting the fraud."[82]  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out."[83]

District courts in this Circuit disagree as to whether arguing the Rule 9(b) pleading standard is appropriate at the summary judgment stage.[84]  Regardless, Whale Capital's Amended Complaint clears the Rule 9(b) hurdle.  Whale Capital alleges Ridgeway "represented that operations in Florida (at least in 2019) were operations of SCL," as he solicited loans from Whale Capital to

---

[80] *Id.* at 23-25.  In one instance, Defendants state that Whale Capital's Complaint alleges it learned of the fraud in December 2019 or January 2020, but that statement is belied by Whale Capital's Amended Complaint.  R. Doc. 22 at ¶ 31 ("Whale Capital discovered in December 2020 or January 2021 that SCL-Florida had been secretly created by Ridgeway as a Ridgeway-owned entity in March 2019.").

[81] Defendants argue in their reply brief that Whale Capital should have discovered the alleged fraud sometime earlier than two years before bringing suit, such as when Whale Capital triggered its reversion option.  R. Doc. 111 at 9-10.  At most, this argument creates a genuine dispute of material fact.  At oral argument, Defendants' new counsel argued that a one-year prescriptive period should apply.  As an affirmative defense, this argument should have been raised in Defendants' Answer, but nonetheless may be considered absent "unfair surprise."  *Jackson v. Am. Bankers Ins. Co.*, 2006 WL 8456128, at *2-3 (E.D. La. Sept. 12, 2006) (applying the "unfair surprise" doctrine to a late-raised prescription argument); *see also Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987) ("Central to requiring the pleading of affirmative defenses is the prevention of unfair surprise."); *Wantou v. Wal-Mart Stores Tex., LLC*, No. 5:17-CV-00018-RWS-CMC, 2020 WL 4664739, at *3 n.1 (E.D. Tex. Mar. 12, 2020) ("Arguments presented for the first time at oral argument are waived here.") (quoting *Comsat Corp. v. FCC*, 250 F.3d 931, 936 n.5 (5th Cir. 2001)) (internal quotation marks omitted).  Considering that Defendants' motion argues a two-year prescriptive period applies and Defendants' one-year prescriptive period argument was not raised until oral argument, Whale Capital was not granted an opportunity to "adequately confront and defend against" the affirmative defense, constituting unfair surprise.  *See Theunissen v. GSI Grp.*, 109 F. Supp. 2d 505, 509 (N.D. Miss. 2000).  Accordingly, Defendants' one-year prescriptive period argument has been waived for purposes of the instant motion.

[82] FED. R. CIV. P. 9(b).

[83] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

[84] *Compare Bryant v. CIT Grp./Consumer Fin., Inc.*, 303 F. Supp. 3d 515, 526 (S.D. Tex. 2018) (finding defendants had failed to meet the summary judgment standard of showing the absence of a genuine dispute of material fact by arguing the Rule 9(b) pleading standard) *with Daniels v. AETC II Privatized Housing, LLC*, No. 5-19-CV-01280-RBF, 2023 WL 2558135, at *4 n.5 (W.D. Tex. Jan. 4, 2023) ("If Plaintiffs cannot satisfy Rule 9(b) at this late stage, where their claims have benefitted from significant discovery, then the fraud claims must be dismissed.").

fund SCL-Florida's operations.[85]   The Amended Complaint lists the dates of the 2019 loans.[86]

And Whale Capital alleges Ridgeway maintained this illusion through similar representations

made on SCL's website and social media.[87]   These allegations indicate Ridgeway intended to

induce Whale Capital to fund SCL's Florida operations on the basis that it had an equity interest

in those operations and provide the necessary "who, what, when, where, and how."   Accordingly,

the allegations are sufficient to meet Rule 9(b)'s particularity requirement.

### C.  Objection to Ridgeway's Bankruptcy Claim

Ridgeway submitted a claim for $3,233,379.25 in the bankruptcy proceedings as an

unsecured creditor of SCL.[88]   Here, Whale Capital objects to Ridgeway's claim, arguing

Ridgeway's claim "is subject to setoff for the damages Christopher Ridgeway caused SCL by his

breaches of fiduciary duty as manager of SCL."[89]   Ridgeway's alleged breaches include: (1)

directing SCL to make loans to SCL-Florida, depriving SCL of much-needed cash; (2) diverting

business opportunities to SCL-Florida at SCL's expense; and (3) sending money to Ridgeway's

family members and other companies he owned instead of paying back SCL's creditors, like Whale

Capital.[90]

---

[85] R. Doc. 22 at 17-18.
[86] *Id.* at ¶¶ 15-16.
[87] *Id.* at 18.
[88] *See* Schedule E/F: Creditors Who Have Unsecured Claims, Claim No. 3.17, R. Doc. 177 at 3, *In re Stone Clinical Lab'ys, LLC*, No. 21-10923 (Bkr. E.D. La. Feb. 6, 2022).
[89] R. Doc. 22 at 20.
[90] *See id.* at 20-21.

11 U.S.C. § 502(a) permits a creditor to object to another creditor's claim in a bankruptcy proceeding.[91]  But "[w]hen a trustee has been appointed, courts generally hold that a general creditor does not have standing to object to a proof of claim."[92]  As *Collier* notes,

> [A]part from the line of cases permitting some indirect mode of contest, the right of individual creditors to object to the claim of another creditor is restricted. While a creditor may object before a trustee is qualified or when there is no trustee, once the trustee has been duly appointed it is the duty of the trustee to examine and take action concerning the disallowance of claims.[93]

Section 6.9 of SCL's Amended Plan of Reorganization (the "Plan") slightly alters the standard rule, permitting a party holding an interest in the liquidating trust to "petition the Court for authority to file a claim objection *if the Trustee has elected not to file an objection to a claim and has not settled such claim*."[94]

The Liquidating Trustee has been appointed and, as Whale Capital concedes, is pursuing this claim in the Bankruptcy Court.[95]  Thus, there is a strong presumption that it is inappropriate for Whale Capital, instead of the Liquidating Trustee, to assert this claim.  This is true regardless of the outcome of the Liquidating Trustee's pursuit of the claim because Section 6.9 of the Plan turns on whether the Liquidating Trustee has brought the objection, not its outcome.

---

[91] *See* 11 U.S.C. § 510(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects."); *see also In re Mechanicsburg Fitness, Inc.*, 592 B.R. 798, 807 (Bankr. M.D. Pa. 2018) ("The language of section 502(a) is clear and unambiguous. It plainly authorizes a party in interest to object to any claim or interest, proof of which is filed under section 501 of the Code.").

[92] *In re Abengoa Biomass of Ks., LLC*, No. 16-10446, 2018 WL 2138620, at *3 (Bkr. D. Kan. May 7, 2018) (citing Bloomberg Law: Bankruptcy Treatise, Pt. II, Ch. 51 at § III.C [Bankruptcy Code § 502(a)] (D. Michael Lynn et al. eds., 2017), available at www.bloomberglaw.com/content/bankruptcytreatise) (internal quotation marks omitted).

[93] *See id.* (quoting Richard Levin & Henry J. Sommer eds., 4 COLLIER ON BANKRUPTCY ¶ 502.02[2][d] (16th ed.)).

[94] *See* Amended Plan of Reorganization Filed by the Debtor and the Official Committee of Unsecured Creditors as of January 14, 2023, R. Doc. 19-4 at 45 (emphasis added).

[95] *See* Objection to Scheduled Claim No. 3.17 of Christopher Ridgeway, R. Doc. 731, *In re Stone Clinical Lab'ys, LLC*, No. 21-10923 (Bkr. E.D. La. June 29, 2023); *see also* R. Doc. 108 at 30 n.145 ("As to Claim 3, the Bankruptcy Court found that Whale Capital could assert the claim here, but it would be stayed to the extent the SCL trustee chose to pursue that same claim.  Whale Capital understands that the SCL trustee has pursued that claim, and Whale Capital accordingly has not actively litigated it here to-date. Thus, Claim 3 may remain in this case though stayed for now.").

Whale Capital contends Magistrate Judge Currault's order allowing Whale Capital to amend its Complaint to add the objection endorses its position that it may bring this claim before this Court.[96]   In that order, Judge Currault noted that the Confirmation Order granted Whale Capital permission to make this objection "only if the SCL bankruptcy trustee (Dwayne Murray) does not assert that objection in the bankruptcy court."[97]   Given that the Liquidating Trustee has asserted this objection in the Bankruptcy Court, this argument fails.[98]

In sum, Whale Capital has not cleared the hurdles necessary to bring this claim in the district court.  Moreover, it is also possible Whale Capital could lack prudential standing to assert this claim.[99]   Nevertheless, the Bankruptcy Court is better positioned to address that issue, so this claim shall therefore be referred to the Bankruptcy Court.

### D.  Subordination of Ridgeway's Bankruptcy Claim

Whale Capital also seeks to subordinate Ridgeway's bankruptcy claim on the basis that Ridgeway disguised the true ownership structure of the Florida operations.[100]   As discussed above, Whale Capital has submitted evidence suggesting Ridgeway deceived Whale Capital into believing that SCL-Florida was owned by SCL, inducing Whale Capital into funding an entity it did not own.

11 U.S.C. § 510 permits subordination of bankruptcy claims under certain circumstances.  Relevant here, Section 510(c)(1) provides that courts may, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part

---

[96] *See* R. Doc. 108 at 29-30.
[97] R. Doc. 21 at 1-2.
[98] As discussed in more detail below regarding Claim 4, Judge Currault's order did not evaluate whether there was cause to withdraw Claim 3 from the Bankruptcy Court, though Whale Capital concedes that this claim is subject to the General Order of Reference to the Bankruptcy Court.  *See* R. Doc. 22 at 20 n.5.
[99] "[P]rudential standing does not present a jurisdictional question, but a merits question: who, according to the governing substantive law, is entitled to enforce the right?"  *Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022) (quotation omitted).
[100] R. Doc. 22 at 22.

of another allowed claim or all or part of an allowed interest to all or part of another allowed interest."[101]   Three requirements must be met for subordination: (1) inequitable conduct by the claimant to be subordinated; (2) the inequitable conduct caused injury to the other creditors or gave the claimant an unfair advantage; and (3) consistency with the Bankruptcy Code.[102]   Inequitable conduct may constitute (a) fraud, illegality, or a breach of fiduciary duties; (b) undercapitalization; or (c) the claimant's use of the debtor as a mere instrumentality or alter ego.[103]   The Confirmation Order gives Whale Capital (among others) the right to seek subordination under 11 U.S.C. § 510(c),[104] but does not specify when or in which court such a claim may be brought.[105]

Defendants first argue this claim must fail because Whale Capital lacks standing as an individual creditor to seek subordination.  Defendants cite no support for this argument, and it is contradicted by the plain language of the Confirmation Order, which allows Whale Capital to "assert and/or maintain a claim under 11 U.S.C. § 510(c) asserting that the claim of Christopher Ridgeway . . . should be subordinated below the claim of [Whale Capital]."[106]

Defendants also argue that this claim should be adjudicated by the Bankruptcy Court.[107] 28 U.S.C. § 157(a) permits district courts to refer cases arising under title 11 of the United States Code to the bankruptcy judges for the district court.  Bankruptcy judges may hear core proceedings under title 11 or in cases arising under title 11, and non-core proceedings otherwise related to a

---

[101] 11 U.S.C. § 510(c)(1).
[102] *In re Hedged-Investments Assocs., Inc.*, 380 F.3d 1292, 1300 (10th Cir. 2004) (citing *In re Mobile Steel Co.*, 563 F.2d 692, 699-700 (5th Cir. 1977)).
[103] *Id.* at 1301 (citing *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators)*, 926 F.2d 1458, 1467 (5th Cir. 1991)).
[104] *See* R. Doc. 19-4 at 3.
[105] *Id.*
[106] *See* R. Doc. 19-4 at 3 (permitting modification to the Plan to allow "Christopher Ridgeway, the Stone Entities, and/or Whale Capital to assert and/or maintain a claim under 11 U.S.C. § 510(c) asserting that the claim of Christopher Ridgeway, the Stone Entities, and/or Whale Capital should be subordinated below the claim of such party bringing the § 510(c) action").
[107] *See* R. Doc. 95-1 at 29-30.

case under title 11.[108]  Under the Eastern District of Louisiana's General Order of Reference, all such proceedings are automatically referred to the bankruptcy judges.[109]  And, Whale Capital's Amended Complaint concedes that this claim is "subject to the General Order of Reference."[110]

The General Order of Reference provides exceptions to automatic referral, only one of which arguably applies: "Civil actions, bankruptcy cases, and proceedings specifically withdrawn from the general reference to the Bankruptcy Judges."[111]  An action or proceeding can only be specifically withdrawn from the general reference to a bankruptcy judge if the district court finds "cause shown."[112]  The Fifth Circuit has identified several factors for district courts to consider when determining whether cause to withdraw exists: (1) whether the nature of the proceedings are core or non-core; (2) whether withdrawal would promote uniformity in bankruptcy administration; (3) whether withdrawal would reduce forum shopping and confusion; (4) whether withdrawal would "foster[] the economical use of the debtors' and creditors' resources"; and (5) whether withdrawal would expedite the bankruptcy process.[113]

Whale Capital contends that it can pursue its subordination claim here because Judge Currault's order found that this claim "may proceed in this proceeding solely with respect to acts that affected Whale individually and specifically."[114]  But nowhere in the Confirmation Order, upon which Judge Currault relied, was this claim "specifically withdrawn from the general reference" to the Bankruptcy Court.  Nor was this claim specifically withdrawn by Judge Currault's Order, which did not address whether there was cause for withdrawal.

---

[108] *See* 28 U.S.C. § 157(b)(1) and (c)(1); *see also In re Meachem*, No. 22-00235, 2025 WL 1093800, at *2 (E.D. La. Apr. 11, 2025) (citing *In re Serv. Marine Inds. Inc.*, No. CIV. A 00-579, 2000 WL 777912, at *1 (E.D. La. May 30, 2000)).  28 U.S.C. § 157(b)(2) provides a non-exhaustive list of core proceedings.
[109] General Order of Reference 2021-5, Eastern District of Louisiana (Apr. 22, 2021).
[110] R. Doc. 22 at 20 n.5.
[111] General Order of Reference 2021-5, Eastern District of Louisiana (Apr. 22, 2021).
[112] 28 U.S.C. § 157(d); *see e.g.*, *In re Meachem*, 2025 WL 1093800, at *2.
[113] *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985).
[114] R. Doc. 21 at 2.

At oral argument, Whale Capital pointed to the Bankruptcy Court's January 11, 2024 Order approving a settlement between the Liquidating Trustee and Whale Capital, preserving "Whale's rights to continue to seek subordination of Christopher Ridgeway's Proof of Claim."[115] That order says nothing, however, about *where* Whale Capital may pursue this claim.

In sum, Whale Capital concedes this claim is subject to the General Order of Reference, and this claim has not been withdrawn from the Bankruptcy Court. Whale Capital has not argued that this claim is appropriate for withdrawal; instead, Whale Capital only relies on Judge Currault's brief decision permitting Whale Capital's unopposed motion to amend its complaint. That decision was made under the "more liberal standard of Rule 15(a)" rather than "the more stringent good cause requirements of Fed. R. Civ. P. 16(b),"[116] and the Bankruptcy Court's February 3, 2023 Order Confirming Bankruptcy Plan is silent on the issue of where this claim should proceed.[117] Whale Capital has not shown that this claim should proceed in the district court, and this claim shall, therefore, be referred to the Bankruptcy Court.

### E.  Declaratory Judgment

Whale Capital's last claim is for a declaratory judgment that it owned 47% of SCL's equity before the Plan was confirmed.[118] Whale Capital contends that "[a] ruling on this Declaratory Judgment claim will inform the Liquidating Trustee of SCL as to whether he will be required to file partnership returns for SCL for the years 2020, 2021, 2022, and possibly 2023."[119] Defendants

---

[115] *See* R. Doc. 835, *In re Stone Clinical Lab'ys., LLC*, Case No. 21-10923 (Bkr. E.D. La. Jan. 11, 2024).

[116] R. Doc. 21 at 2, n.2.

[117] At the very least, it does not appear that mandatory withdrawal applies here because Whale Capital's subordination claim does not implicate "a substantial and material question of both title 11 and non-Bankruptcy Code federal law." *See Off. Comm. of Unsecured Creditors of First NBC Bank Holding Co. v. Ryan*, No. 19-10341, 2021 WL 1143649, at *2 (E.D. La. Mar. 25, 2021) (quoting *Lifemark Hosps. of La., Inc. v. Liljeberg Enters. Inc.*, 161 B.R. 21, 24 (E.D. La. 1993)) (internal quotation marks omitted); *see also* 28 U.S.C. § 157(d) (withdrawal of reference to bankruptcy court is mandatory when "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.").

[118] R. Doc. 22 at 23.

[119] *Id.* at 26.

suggest that this claim should be before the Bankruptcy Court pursuant to the General Order of Reference, [120] though Defendants neglected to assert that argument in the body of their original brief.

Unlike Claims 3 and 4, Whale Capital does not concede this claim is subject to the General Order of Reference. Under 28 U.S.C. § 1334, a proceeding is "related to" a bankruptcy case for purposes of establishing jurisdiction if it is "arising under title 11, or arising in or related to cases under title 11."[121] The General Order of Reference provides for automatic referral of proceedings coextensive with jurisdiction conferred by § 1334.[122] The Fifth Circuit has explained that "related to" jurisdiction is satisfied "if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate."[123]

Whale Capital once again relies on Judge Currault's Order granting its motion to amend its complaint to argue that this Court has already determined this claim should proceed here.[124] But the Confirmation Order, upon which Judge Currault's Order relied, says nothing about whether Whale Capital may pursue this claim in the district court, and Judge Currault's order did not find cause for withdrawing the claim from the Bankruptcy Court. Moreover, Whale Capital's Amended Complaint asserts that it only seeks this relief for its effect on the obligations of the Liquidating Trustee. Thus, this claim would undoubtedly "influence the administration of the bankrupt estate."

---

[120] See R. Doc. 95-1 at 28-30.
[121] 28 U.S.C. § 1334(b); see also Dan-Gulf Shipping, Inc. v. Jagtani, No. 23-5062, 2023 WL 8281512, at *1 (E.D. La. Nov. 30, 2023).
[122] Dan-Gulf Shipping, 2023 WL 8281512, at *1; see also United Cmty. Bank v. BWB Houma Holdings, LLC, No. 24-300, 2024 WL 4649134, at *3 (E.D. La. Mar. 15, 2024).
[123] In re TMT Procurement Corp., 764 F.3d 512, 526 (5th Cir. 2014) (citing In re TXNB Internal Case, 483 F.3d 292, 298 (5th Cir. 2007)) (internal quotation marks omitted).
[124] See R. Doc. 108 at 29-30.

Accordingly, this claim is subject to the General Order of Reference and has not been withdrawn, so this claim shall be referred to the Bankruptcy Court.

*          *          *

One other issue has been dormant in this case but must be addressed—whether this Court has subject matter jurisdiction over Ridgeway's counterclaim.  Defendants' Answer asserts a counterclaim on behalf of Ridgeway, contending that Whale Capital hid that Michael Whalen, its limited partner, had been previously convicted of a securities violation, eventually harming SCL and Ridgeway by limiting SCL's funding sources.[125]  Ridgeway claims he was "injured as a result of Whale's negligence and malicious conduct and is entitled to the lost profits of SCL."[126]

This Court previously ordered the parties to brief the issue of whether this Court holds subject matter jurisdiction over Defendants' counterclaim, and it denied without prejudice Whale Capital's motion to dismiss Defendants' counterclaim pending the resolution of this inquiry.[127] Defendants argue that Ridgeway's counterclaim should be before the Bankruptcy Court because it relates to Plaintiffs' bankruptcy claims and those claims belong before the Bankruptcy Court.[128]

Federal Rule of Civil Procedure 13(a)(1) provides that a party must assert in its pleading a compulsory counterclaim which either "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction."  "When a counterclaim is compulsory it is within the supplemental jurisdiction of the court because it must arise out of the same transaction or occurrence as the original claim."[129]

---

[125] R. Doc. 25 at 13-17.
[126] *Id.* at 17.
[127] R. Doc. 64.
[128] R. Doc. 92 at 5.
[129] *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, No. 10-4505, 2011 WL 3268386, at *6 (E.D. La. July 28, 2011).

Ridgeway's counterclaim arises out of the same constellation of facts as Whale Capital's claims here. Ridgeway contends SCL's funding problems can be traced to Whalen's involvement in the company, while one of Whale Capital's (now dismissed) theories of fraud relates to those same funding difficulties. While this Court has subject matter jurisdiction over the counterclaim, the Court shall leave determination of its proper forum and its merits for another day.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Claims 3 through 5 are referred to the United States Bankruptcy Court for the Eastern District of Louisiana, to be adjudicated in conjunction with Action No. 21-10923.

**IT IS FURTHER ORDERED** that Whale Capital is granted leave to re-file its Motion to Dismiss Defendants' counterclaim no later than two weeks from the date of this Order.

New Orleans, Louisiana, this 8th day of August 2025.


_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**